Darry JACKSON, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CRIM.95–50029, CIV.00–40020.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 2003.

Darry Jackson, Federal Correctional Institution, Talladega, AL, Pro se.

Mark C. Jones, U.S. Attorney's Office, Flint.

Arthur J. Weiss, Farmington Hills.

Arthur A. Weiss, Jaffe, Raitt, Detroit.

## ORDER DENYING MOTION TO VACATE SENTENCE

GADOLA, District Judge.

Before the Court is Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Where, as here, the records and files of a case determinatively establish that a petitioner is not entitled to relief, the law does not require, and this Court will not order, an evidentiary hearing for a § 2255 motion.[1] For the reasons set forth below, the Court will deny Petitioner's motion.

### I. BACKGROUND

On June 19, 1996, a jury of his peers found Petitioner guilty of one count of conspiring to distribute cocaine, 21 U.S.C. § 846, one count of making false statements to a federally-insured bank, 18 U.S.C. § 1014, and two counts of money laundering, 18 U.S.C.1956(a)(1). On November 7, 1996, this Court sentenced Petitioner to concurrent terms of 360 months for the conspiracy count and 240 months for each of the other three counts.[2] On October 6, 1998, the United States Court of Appeals for the Sixth Circuit affirmed the conviction and sentence. *See United States v. Jackson,* No. 96–2485, 1998 WL 739820, at *1 (6th Cir. Oct.6, 1998). On January 11, 1999, the Supreme Court of the United States denied Petitioner's peti-

---

**1.** *See Stanford v. Parker,* 266 F.3d 442, 459–60 (6th Cir.2001) ("a [habeas] petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are ... without merit."); *Green v. United States,* 65 F.3d 546, 548 (6th Cir.1995); *Baker v. United States,* 781 F.2d 85, 92 (6th Cir.1986); 28 U.S.C. § 2255; R. Govern'g Sec. 2255 Proc'dngs 8(a).

**2.** Petitioner's 360–month sentence was later reduced to 300 months because of his cooperation with the Government in an unrelated case.

tion for the writ of certiorari. *See Jackson v. United States,* 525 U.S. 1087, 119 S.Ct. 837, 142 L.Ed.2d 693 (1999).

On January 12, 2000, the Court received Petitioner's § 2255 motion. In this action, Petitioner has raised three habeas claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) violations of the doctrine of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). On December 20, 2000, the Court denied habeas relief on all three claims. On August 22, 2002, the Sixth Circuit agreed with the result reached by this Court on the ineffective assistance of appellate counsel and *Apprendi* claims, but it reversed on the ineffective assistance of trial counsel claim, which this Court denied on procedural grounds. Consequently, the Court now proceeds to adjudicate the only remaining issue in the case: the merits of Petitioner's ineffective assistance of trial counsel claim.

## II. LEGAL STANDARD

To obtain relief pursuant to § 2255, a petitioner must establish any one of the following: (1) his sentence was imposed in violation of the Constitution or federal law; (2) the Court lacked jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum allowed by law; or (4) his sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255.

To establish that his counsel was ineffective, Petitioner must prove that (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A strong presumption exists that counsel afforded the defendant reasonable professional assistance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to *eliminate the distorting effects of hindsight,* to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (emphasis added) (citations omitted). To satisfy the second prong of the *Strickland* test, a petitioner must show that "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052 (emphasis added). Therefore, "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002) (quoting *Campbell v. Coyle,* 260 F.3d 531, 551 (6th Cir.2001)).

## III. ANALYSIS

Petitioner raises six arguments to support his claim of ineffective assistance of trial counsel.

1. Petitioner first alleges that trial counsel rendered ineffective assistance by

not informing Petitioner that the Government had offered Petitioner a plea agreement. In support of this allegation, Petitioner has submitted two affidavits. The first affidavit is from Petitioner, in which he declares that his trial counsel never informed him of the Government's plea agreement and that, had he known of the plea agreement, he would have accepted it. *See* Pet'r Br. Ex. A. The second affidavit is from Petitioner's "inmate paralegal." This second affidavit is a purported account of a telephone conversation between the "inmate paralegal" and Petitioner's trial counsel, in which trial counsel reportedly said that he was uncertain as to whether he informed Petitioner of the plea agreement offered by the Government. *See id.* Ex. B. On the other hand, the Government has provided the Court with a declaration from Petitioner's trial counsel that states: counsel brought the plea offer to Petitioner's attention; counsel encouraged Petitioner to actively consider the plea offer; and Petitioner rejected the plea offer. *See* Gov't Br. Attach. 13.

■ Although counsel's failure to inform a defendant of a plea offer constitutes deficient representation, *see Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999), *Toledo–Yin v. United States,* 26 Fed. Appx. 406, 408 (6th Cir.2001), Petitioner "has presented *no credible evidence* that counsel failed to inform him of a plea offer and instead merely relies on his own self-serving statements." *Toledo–Yin,* 26 Fed.Appx. at 408 (relying on an affidavit from the habeas petitioner's counsel, provided by the Government, to rule against the petitioner's plea offer allegation) (emphasis added). The Court has "carefully examined" the affidavits of Petitioner and his "inmate paralegal" and finds that both documents contain "nothing to suggest that [Petitioner's] claim is meritorious." *Turner v. United States,* 183 F.3d 474, 477 (6th Cir.1999).

As to the affidavit of the "inmate paralegal," his relevant statements, recounting what trial counsel purportedly said in a telephone conversation, are nothing more than inadmissible hearsay. *See* Fed. R.Evid. 801–04. Furthermore, these relevant statements do not advance Petitioner's habeas allegation. Petitioner seizes on three aspects of the telephone conversation: trial counsel, at first, could not recall whether the government had offered Petitioner a plea agreement; then, trial counsel was uncertain as to whether he informed Petitioner of the plea agreement; and, finally, trial counsel did not deny Petitioner's allegation that trial counsel never communicated the existence of the plea agreement. *See* Pet'r Br. Ex. B at ¶¶ 6–7. These three items provide no reasonable indication that Petitioner's habeas allegation is true. Rather, they merely show that when confronted out of the blue by a former client's representative, counsel was unable to recall the specifics of one particular case. This small lapse in counsel's memory is more than understandable given the time involved, nearly four years: the plea offer was extended in November 1995 and the telephone conversation reportedly occurred in August 1999. *See id.* Ex. B at ¶ 4, Ex. C at 11. Thus, the evidence supplied by the "inmate paralegal" is of no value to Petitioner's case. *Cf. Arredondo,* 178 F.3d at 783 ("In short, [petitioner] did not offer any admissible evidence that the plea offer occurred, and the hearsay he offered was not credible.... Therefore, it was not error for the district court to reject [the] allegation without holding an evidentiary hearing.").

As to Petitioner's affidavit, it is partially plagued by the same shortcomings infecting the "inmate paralegal's" affidavit insofar as Petitioner's affidavit recounts the "inmate paralegal's" telephone conversation as well as Petitioner's own telephone conversation with trial counsel. *See* Pet'r

Br. Ex. A at ¶¶ 3–5. Moreover, Petitioner's affidavit contains only two significant sentences:

> [M]y attorney... never communicated to me that the government had extended to him a plea agreement on my behalf. I first learned of the plea offer after having an inmate paralegal review my case file to see whether there were any issues that could be argued in a section 2255 petition.

*Id.* at ¶ 2. The Court cannot accept these allegations to be true because they are "inherently incredible." *Arredondo,* 178 F.3d at 782 (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Based on the Court's recollections from trial, the Court has no reason to believe that any self-serving statements made by Petitioner are truthful. *See Arredondo,* 178 F.3d at 782 ("Where, as here, the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial.") (citing *Blanton v. United States,* 94 F.3d 227, 235 (6th Cir.1996)). At sentencing, in deciding to increase Petitioner's offense level by two levels for obstructing justice, the Court summarized its recollections from trial about Petitioner's inability to tell the truth as follows:

> [H]ere [Petitioner] unequivocally categorically denied that he committed any of these offenses. And the jury found, and I must say they found on abundant evidence, that he was lying.... And what's required here for me to find an obstruction of justice is to determine that [he perjured himself] by a preponderance of the evidence. I find it's established certainly by a preponderance of the evidence ... that he perjured himself. The jury went far beyond that. They found beyond a reasonable doubt that he perjured himself.

Gov't Br. Attach. 23 at 6, 14 (sentencing transcript from Nov. 7, 1996); *see also id.*

at 6–12 (the Government's account of the numerous and multifarious ways in which Petitioner was untruthful at trial). Given Petitioner's proclivity to lie to this Court, the Court will not now entertain his present self-serving statements in his affidavit as true. Since he lied to the Court at trial, he is just as likely, if not more so, to lie to the Court now. Thus, Petitioner's allegation, supported merely by his own self-serving statements, are "inherently incredible." *Arredondo,* 178 F.3d at 782–83; *see also Toledo–Yin,* 26 Fed.Appx. at 408; *cf. Turner,* 183 F.3d at 477 ("it would be nonsensical to conclude that the petitioner could meet [his] burden simply by proclaiming his innocence. [The petitioner's] affidavit contains nothing to indicate that his counsel's performance was constitutionally infirm; therefore, the district court did not err in refusing to conduct an evidentiary hearing" in denying habeas relief).

Therefore, after discounting Petitioner's and the "inmate paralegal's" affidavits, the only relevant item that remains is trial counsel's declaration, which clearly indicates that trial counsel did inform Petitioner of the plea agreement and that Petitioner rejected it. *See* Gov't Br. Attach. 13 at ¶¶ 6–7. As a result, Petitioner's allegation regarding the plea agreement is without merit; trial counsel's performance was not deficient. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ Alternatively, even if trial counsel did not inform Petitioner of the plea agreement (i.e., trial counsel's performance was deficient), Petitioner has failed to establish that there is a reasonable probability that the result of the preceding would have been different. *Id.* at 694, 104 S.Ct. 2052. In other words, Petitioner has not shown a reasonable probability that he would have accepted the plea agreement. At any plea hearing, Petitioner would have to provide a factual basis for his guilt.

However, at trial, Petitioner testified to his innocence while under oath. Had Petitioner not testified, the situation would have been different, but, as mentioned *supra*, he unequivocally and categorically denied that he committed any of the charged offenses. Petitioner cannot have it both ways. He cannot tell the jury under oath that he is innocent and claim now that he would have told the Court under oath that he was guilty.

Yet, Petitioner attempts to do just that in his untrustworthy affidavit. He rests his entire reasonable probability argument on a single, dubious sentence in the affidavit:

Certainly, if I been [sic] informed of the government's plea offer, I would have accepted the plea agreement rather than going to trial and risk receiving a thirty (30) year sentence.

Pet'r Br. Ex. A at ¶ 6; *see also* Pet'r Br. at 6. "This self-serving, after-the-fact assertion concerning his wish to plead guilty is insufficient, by itself, to establish a 'reasonable probability' that he would have pleaded guilty." *United States v. Nwankwo*, 2 F.Supp.2d 765, 769 (D.Md.1998) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Accordingly, Petitioner is not entitled to § 2255 relief on his first ineffective assistance of trial counsel claim.

■ 2. Petitioner next claims that trial counsel was ineffective in failing to investigate a possible defense to the false statements charge and to request a corresponding jury instruction about the purported defense. This argument is also devoid of merit. The correctness of Petitioner's position hinges on the premise, for which Petitioner cites to no authority, that his conviction for making false statements, in violation of 18 U.S.C. § 1014, turned on whether his signature appeared on certain loan documents. This premise is flawed, for, as the Government states in its brief, the Government did not even claim that

Petitioner signed the pertinent documents. *See* Gov't Br. at 7. One can violate § 1014 without signing a document. *See* 18 U.S.C. § 1014 ("Whoever knowingly makes any false statement or report..."). Consequently, trial counsel's performance was not deficient. Therefore, Petitioner is not entitled to § 2255 relief on his second ineffective assistance of trial counsel claim.

■ 3. Petitioner also claims that trial counsel was ineffective in not requesting limiting instructions for purported Rule 404(b) evidence. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). However, the evidence in question was not inadmissible Rule 404(b) evidence; rather, it was evidence admitted and used to prove the conspiracy charge. *See* Gov't Br. at 9–10 & Attach. 19 at 26–27; *United States v. Okayfor*, 996 F.2d 116, 119–20 (6th Cir. 1993). *See also Jackson*, 129 F.Supp.2d at 1065 (with respect to Petitioner's ineffective assistance of appellate counsel claim, this Court ruled that this same evidence was not inadmissible Rule 404(b) evidence; this ruling was affirmed by the Sixth Circuit on appeal, *see Jackson*, 45 Fed.Appx. at 385 ("The district court's detailed discussion of why [this claim lacks] merit is persuasive, and [Petitioner] provides no convincing argument or evidence on appeal to establish that the district court's determination was incorrect.")). Thus, moving for a limiting instruction in this situation would have been futile, and failing to file "such a motion [is] not ineffective assistance of counsel." *United States v. Thomas*, 38 Fed.Appx. 198, 202 (6th Cir.2002); *see also Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to engage in the filing of futile motions."). Therefore, trial counsel was not deficient in this regard, and Petitioner's third ineffective assistance of trial counsel claim is without merit.

4.  Additionally, Petitioner alleges that trial counsel was ineffective in neglecting to investigate and impeach a Government witness, who pleaded guilty in 1993 in another criminal case. Specifically, Petitioner's argument is as follows:

> The indictment in this case charged a drug conspiracy from 1987–1995. [The Government witness] testified to numerous acts taking place after 1991 with petitioner. [The Government witness' guilty] plea transcript indicates that he stopped dealing drugs in January 1991 or earlier and had other relationships with the alleged coconspirators [in the present case] after that time. The transcript from [the Government witness'] plea hearing, the judgment and commitment order, and the indictment against [the Government witness] could have affected the jury and/or the quantity of drugs attributable to petitioner at sentencing. Therefore, counsel should have investigated and impeached [the Government witness] with the evidence described above.

*See* Pet'r Br. at 11–12.

■   As the government points out in its brief, Petitioner's interpretation of the situation surrounding the Government witness is misleading. *See* Gov't Br. at 8. The plea hearing transcript and the other pertinent documents supplied by Petitioner do not establish, contrary to Petitioner's belief, that the Government witness did not sell narcotics and/or did not have knowledge of the conspiracy's activities after January 1991. *See* Pet'r Br. Exs. E–H. Rather, the documents merely state that the specific crime to which the Government witness pleaded guilty took place from approximately 1987 to January 1991. Further, the plea hearing transcript actually undermines Petitioner's argument because it indicates that the Government witness had contact with members of the relevant conspiracy beyond the 1987–1991 time frame thereby suggesting that the Government witness was in a position to truthfully testify against Petitioner about events that occurred after January 1991. *See id.* Ex. E at 26. Thus, any benefit from impeaching this Government witness, in the manner theorized by Petitioner, would have been negligible at best. Therefore, trial counsel's performance was not deficient. Alternatively, even if counsel's performance was deficient, Petitioner has not established a reasonable probability that the result of the proceeding would have been different given the futility of the proposed impeachment as well as the substantial evidence, *see* Gov't Br. at 9, against Petitioner. As a consequence, Petitioner is not entitled to § 2255 relief on his fourth ineffective assistance of trial counsel claim.

■   5.  Petitioner further contends that trial counsel was ineffective in failing to object to or contest the presentence investigation report's drug quantity finding or challenge it at sentencing. Petitioner argues that his base offense level of 38, which is the corresponding level for a quantity of 150 kilograms or more of cocaine under U.S.S.G. § 2D1.1(c)(1), was incorrect because it was premised on inaccurate information. The supposed inaccurate information concerns the exact same Government witness discussed in the preceding subpart of this order. The Government witness' trial testimony provided the foundation for the 150 kilogram cocaine quantity.

Petitioner's reasoning, however, suffers from the same flaws discussed in the prior subpart. For example,

> Petitioner contends that if the facts recited in [the Government witness'] plea transcript, [his] judgment and Indictment, and [a] grand jury transcript are true, then petitioner cannot be held accountable for the 150 kilograms of co-

caine [the Government witness] testified he delivered to petitioner between 1988–1993. This is especially true, since in [the Government witness'] guilty plea transcript he specifically told the Court (for certain) that the time period he was delivering cocaine for the conspiracy was "between 1989 and 1990." There is no mention in the record of the subsequent years–1991–1993. This period is critical to petitioner's case, since the majority of the cocaine [the Government witness] claimed he delivered to petitioner occurred in '88, '89, '92, or '93.

Pet'r Br. at 27; *see also id.* Exs. E–G. Again, these documents say nothing about events after January 1991, a point which even Petitioner concedes in his brief. *See id.* at 27 ("There is no mention in the record of the subsequent years–1991–1993."). The documents concerning the Government witness merely show that the particular crime for which the Government witness admitted responsibility took place from approximately 1987 to January 1991. Since these documents are silent as to events occurring after January 1991, Petitioner has not provided the Court with any basis to doubt that the Government witness was in a position to truthfully testify against Petitioner about events that occurred after January 1991.

Consequently, Petitioner's documents, which he classifies as newly discovered evidence, do not generate any reason to question the accuracy of the sentencing information, which was drawn from competent evidence in the record.[3] Therefore, any objection or challenge to the sentencing information by trial counsel, in the fashion suggested by Petitioner, would have been futile, and thus, does not consti-

tute a deficient performance. On the other hand, even if counsel's performance was somehow deficient, Petitioner has not established a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As a consequence, Petitioner is not entitled to § 2255 relief on his fifth ineffective assistance of trial counsel claim.

■ 6. Finally, Petitioner asserts that trial counsel was ineffective because he did not object to the jury selection process. This argument is premised on *United States v. Ovalle,* 136 F.3d 1092 (6th Cir. 1998). In *Ovalle,* the Sixth Circuit held that the now-former jury selection plan in this judicial district "violated the Jury Selection and Service Act, 28 U.S.C. § 1862, and the Equal Protection Clause, because it allowed the removal of every fifth non-black juror from the jury wheel in order to increase the number of black jurors." *United States v. Blair,* 214 F.3d 690, 695 (6th Cir.2000) (citing *Ovalle,* 136 F.3d at 1099–1100, 1105–07).

Assuming, *arguendo,* that Petitioner has not waived his *Ovalle* claim and that trial counsel's failure to raise an *Ovalle*-type objection qualifies as a deficient performance, there still is no reasonable probability that the outcome of the proceeding would have been different. That is because Petitioner is unable to show the necessary "actual prejudice." *See Ovalle,* 136 F.3d at 1107 (citing *Davis v. United States,* 411 U.S. 233, 245, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973)). As the Government aptly points out, the situation here is not one where a timely objection would have resulted in the exclusion of incriminating evidence or access to exculpatory evidence,

---

**3.** *See United States v. Campbell,* 317 F.3d 597, 604 (6th Cir.2003) ("If an exact quantity of drugs is uncertain, a trial court's estimate of the drug quantity must be supported by competent evidence in the record. Testimony of a coconspirator may be sufficient to enable a district court to determine a drug quantity for which another coconspirator may be held accountable." (citing *United States v. Owusu,* 199 F.3d 329, 338–39 (6th Cir.2000); *United States v. Pruitt,* 156 F.3d 638, 647 (6th Cir. 1998))).

for example. *See* Gov't Br. at 15. Thus, even if trial counsel raised a timely jury challenge, it would have merely postponed the proceedings until new jurors were selected. There is no reasonable probability that these new jurors would have produced a different result in this case. Thus, Petitioner is not entitled to § 2255 relief.[4]

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and this action is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **THIRTY (30) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). The Government may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **TWENTY (20) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**

---

4. Near the end of his Brief, Petitioner contends that he was prejudiced by cumulative counsel error. However, any "cumulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors." *Alder v. Burt*, 240 F.Supp.2d 651 (E.D.Mich. 2003) (Gadola, J.) (quoting *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir.1990); citing *Lundy v. Campbell*, 888 F.2d 467, 481 (6th Cir.1989)). In this case, the Court has held that all of the errors alleged by Petitioner were either not errors or, if they were, they would have not altered the result of the proceeding. Thus, Petitioner's cumulative-counsel-error argument is without merit.